UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PLANNED FURNITURE PROMOTIONS, INC.,
  Plaintiff,

  v.

CITY ANTIQUE, INC.
d/b/a CLASSIC HOME & ANTIQUE,
  Defendant.

No. 3:14-cv-0279 (MPS)

## MEMORANDUM OF DECISION

**I. Introduction**

Interested in holding a going-out-of-business sale for its furniture store located in Portland, Oregon, defendant City Antique, Inc. ("City Antique"), an Oregon corporation, entered into a contract with plaintiff Planned Furniture Promotions, Inc. ("PFP"), a Pennsylvania corporation with its principal place of business in Connecticut. City Antique has filed a Motion to Dismiss [Doc. #13] ("MTD") PFP's complaint for insufficient service and lack of personal jurisdiction, as well as a Motion to Transfer Venue [Doc. #14], arguing that the Court should transfer this case under 28 U.S.C. §1404(a) to the United States District Court for the District of Oregon. PFP has filed an Opposition to the MTD [Doc. #18] and an Opposition to the Motion to Transfer Venue [Doc. #19] (collectively, the "Objections").

As discussed more fully below, Connecticut's long-arm statute does not allow this Court to exercise personal jurisdiction over City Antique. Nonetheless, in the interest of justice, this case is transferred to the United States District Court for the District of Oregon.

**II. Background[1]**

---

[1] For purposes of this section and in construing these motions, I have relied on the allegations in PFP's complaint, PFP's Objections, and the declaration attached thereto by PFP's president, Robert Rosenberg, and, to the extent not contradicted by the foregoing, the declaration by City Antique's president, Kim Pelett, attached to City Antique's MTD and Motion to Transfer Venue.

1

PFP, a Pennsylvania corporation with its principal place of business in Connecticut, is a consulting corporation providing "high impact" promotional services to retail furniture stores throughout the United States. (Compl. ¶¶ 6, 13.) City Antique is an Oregon corporation that operated a retail furniture store in Portland, Oregon. (Compl. ¶ 11.) Kim Pelett, the sole owner of City Antique, first contacted PFP via email seeking assistance with City Antique's promotional sale, and PFP's Vice President, Tom Liddell, called her in response. (MTD, Pelett Aff. ¶ 5.) The parties then discussed City Antique's retention of PFP to conduct a going-out-of-business sale for City Antique (the "Sale"). (Compl. ¶ 16.) Mr. Liddell arranged for Andrew Winans, PFP's west coast manager, to fly to Portland for an in-person meeting with Ms. Pelett. (MTD, Pelett Aff. ¶ 5.) On May 8, 2013, Mr. Winans met Ms. Pelett in City Antique's Portland store, and Mr. Winans explained PFP's methodology and what City Antique could expect from PFP. (*Id.* ¶ 6.) Ms. Pelett had multiple conversations with Mr. Winans over the phone throughout May.[2] (*Id.*)

The parties conducted all contract negotiations in Oregon. (*Id.* ¶ 5.) On May 31, 2013, they entered into the Sale Promotion Consulting Agreement ("SPCA"), which governed the Sale. (Compl. ¶¶ 14, 22.)[3] Throughout June 2013, PFP's counsel and City Antique's Portland-based counsel negotiated with City Antique's Oregon-based landlord to extend the store's lease. (MTD, Pelett Aff. ¶ 8.) On July 3, 2013, PFP's sales event manager and bookkeeper Naomi Lyon arrived in Portland and began working out of City Antique's store. (*Id.* ¶ 9.) Ms. Lyon

---

[2] In its Objection to the MTD, PFP does not dispute Ms. Pelett's allegations regarding her communications with Mr. Winans, only that "[d]espite Pelett's allegations otherwise, Plaintiff has no offices in California" (Objection to MTD, Rosenberg Aff. ¶ 10), and that negotiations were conducted by a "west coast affiliate." (Objection to MTD, at 6 n.2.) It does not dispute, however, that negotiations were conducted by Mr. Winans or that he was a PFP employee based in California. I will therefore view Ms. Pelett's averments as to her communications with Mr. Winans as true.

[3] Neither party has provided the Court with a full copy of the SPCA. However, City Antique does not dispute the accuracy of the SPCA provisions described by PFP in its complaint, and for purposes of these motions, I will construe PFP's description of the SPCA as true.

opened a bank account in Oregon that PFP used for Sale-related expenses. (*Id.* ¶ 10.) In addition, PFP President Robert Rosenberg and Mr. Winans met with Ms. Pelett at City Antique's store multiple times to sign the SPCA's amendments. (*Id.* ¶ 9.)

PFP brings four claims against City Antique: breach of contract, fraud, unjust enrichment, and declaratory relief. In relevant part, PFP alleges that Ms. Pelett made a number of fraudulent misrepresentations to induce PFP to enter into the SPCA, and that despite PFP's advancing City Antique money for the Sale, City Antique has not reimbursed PFP, a violation of the SPCA. (*See, e.g.*, Compl. ¶¶ 55-57, 79, 90, 97, 107.)

### III.   City Antique's Motion to Dismiss

"On a Rule 12(b)(2)[4] motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing reference omitted). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Id*. "Where . . . a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *Johnsen, Fretty & Co., LLC v. Lands South, LLC*, 526 F. Supp. 2d 307, 310 (D. Conn. 2007) (quoting *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). "The court must 'construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in his favor.'" *Id*.

This case presents a question of personal jurisdiction over a foreign corporation in a diversity suit. "'[T]he amenability of a foreign corporation to suit in a federal court in a diversity

---

[4] City Antique also argues PFP's complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(5) because PFP did not properly effectuate service of the summons and complaint. Because PFP subsequently personally served the summons and complaint upon Ms. Pelett, the president and sole shareholder of City Antique, any service defect has been cured (*see* Second Affidavit of Service [Doc. #17]), rendering City Antique's insufficient service argument moot.

action is determined in accordance with the law of the state where the court sits,'" which, here, is Connecticut.  *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc)). "Connecticut utilizes a familiar two-step analysis to determine if a court has personal jurisdiction.  First, the court must determine if the state's long-arm statute reaches the foreign corporation.  Second, if the statute does reach the corporation, then the court must decide whether that exercise of jurisdiction offends due process." *Id*.  "A trial court need not make the second of these inquiries if it finds that the pertinent section of the long-arm statute does not reach the defendant foreign corporation." *General Star Indem. Co. v. Anheuser-Busch Co.*, No. 3:97-cv-2542, 1998 WL 774234, at *3 (D. Conn. Aug. 24, 1998) (citing *Frazer v. McGowan*, 198 Conn. 243, 246-47 (1986)).

City Antique argues this Court lacks personal jurisdiction over it for several reasons: City Antique is an Oregon corporation that owned and operated a retail store in Oregon, not Connecticut; the parties negotiated the SPCA entirely in Oregon; the Sale was conducted in Oregon; the parties used Portland-based media and supplies for the Sale, and hired employees from the Portland area to assistant in the Sale; the SPCA's choice-of-law provision selects Oregon law; PFP's counsel and Ms. Pelett conducted Sale-related negotiations with City Antique's Portland-based landlord in Oregon; PFP's bookkeeper flew to Oregon and opened up a bank account in Portland for the Sale, from which expenses from the Sale were paid; and Ms. Pelett's main contact at PFP was its California-based employee, Mr. Winans, not PFP's Connecticut personnel. (MTD, at 8-10.)  Although PFP alleges Ms. Pelett communicated with PFP personnel in Connecticut and that PFP does not have a California office (*see* Objection to MTD, at 4; Rosenberg Aff. ¶ 10), it does not dispute the rest of City Antique's assertions, nor

does it allege that Ms. Pelett—or any City Antique employee—ever visited PFP's Connecticut office in relation to the SPCA.

PFP argues that City Antique is nonetheless subject to this Court's jurisdiction under Connecticut's long-arm statute and the due process clause.  PFP relies on subsections (f)(1) and (f)(4) of Connecticut General Statutes § 33-929:

> (f) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follow: (1) Out of any contract made in this state or to be performed in this state . . . or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f).  For the purposes of § 33-929(f), a "foreign corporation" is "a corporation incorporated under a law other than the law of [Connecticut]."  Conn. Gen. Stat. § 33-602(15).

### a. Analysis under § 33-929(f)(1)

Section 33-929(f)(1) allows a court to exercise personal jurisdiction over foreign corporations in two situations: for a cause of action arising "[o]ut of any contract made in this state *or* to be performed in this state."  Conn. Gen. Stat. § 33-929(f)(1) (emphasis added).  PFP does not allege or submit any evidence that it has satisfied the first clause of § 33-929(f)(1), i.e., that the SPCA was made in Connecticut.  Nor does it dispute Ms. Pelett's sworn averments that "the agreement and any changes thereto were negotiated entirely in Oregon.  Not one part of the agreement was negotiated in Connecticut." (MTD, Pelett Aff. ¶ 5.)  Instead, PFP argues that the SPCA was to be "performed" in Connecticut, thereby triggering the second part of § 33-929(f)(1).

5

PFP concedes that the SPCA does not specify the location for performance of the contract, but that "PFP's performance under the SPCA could be reasonably expected to be made in Connecticut . . . [and] was made, in part, in Connecticut." (Objection to MTD, at 3-4.) PFP does not provide any evidence that City Antique performed the contract in Connecticut, instead relying on its *own* performance under the SPCA to satisfy § 33-929(f)(1).

PFP may rely on its own activities in Connecticut to trigger personal jurisdiction under § 33-929(f)(1), because "the relevant contractual performance, for purposes of applying Connecticut's long-arm statute, need not be that of the party over whom jurisdiction is sought." *Johnsen*, 526 F. Supp. 2d at 312 (collecting cases). However, "[w]henever a plaintiff has sought to rely on *its own* performance of the contract in Connecticut to satisfy the long-arm statute, [Connecticut] courts have found jurisdiction only where (1) the contract expressly contemplated or required performance in Connecticut; or (2) the plaintiff had actually performed its obligations in Connecticut and such performance was the most substantial part of the obligations to be performed under the contract." *General Star Indemnity Co.*, 1998 WL 774234, at *4 (collecting cases).

PFP lists a number of activities it alleges it undertook in Connecticut: (1) consideration as to whether to enter into the SPCA occurred in Connecticut; (2) the funds it advanced to City Antique under the SPCA originated in Connecticut; (3) weekly payroll for salespeople was processed by PFP in Connecticut; (4) Ms. Pelett "had communications" with PFP personnel located in Connecticut during the Sale; and (5) PFP reviewed, on a regular basis, the accounting of the Sale from Connecticut. (Objection to MTD, at 4.) In addition, PFP argues that the SPCA's representations were "directed toward PFP in Connecticut," and that PFP incurred its damages in Connecticut. (*Id.*)

These activities do not amount to a prima facie showing of jurisdiction under § 33-929(f)(1). The focus of the SPCA (at least as it is described in the complaint)—and the parties' relationship—was the Sale, which was anticipated to—and did—occur in Oregon at City Antique's store, not in Connecticut. PFP's primary role under the SPCA was that of a consultant for the Sale. These consulting activities could—and did—occur outside Connecticut, thereby undercutting a finding that the SPCA required or contemplated PFP's performance in Connecticut. For example, PFP does not dispute that its bookkeeper traveled to Oregon for the Sale, or that PFP's assistance with negotiations with City Antique's landlord necessary for the Sale occurred in Oregon. PFP relies on evidence that it performed some of its administrative activities in Connecticut, such as processing payroll, sending payments, or having an unspecified amount of "communications" with City Antique, but without more, these activities do not warrant a finding that the SPCA "expressly contemplated or required performance" in Connecticut or that PFP's Connecticut activities comprised the "most substantial part of the obligations to be performed" under the contract. *Compare Thornton & Co. v. Lindamar Indus., Inc.*, No. 3:11-cv-375, 2011 WL 6140891, at *3 (D. Conn. Dec. 9, 2011) (finding plaintiff's administrative acts undertaken in Connecticut, such as making calls to outside suppliers, running periodic credit checks, wiring funds, mailing invoices, and communications with defendant by phone, email and fax did not demonstrate the contract contemplated or required performance in Connecticut, because where plaintiff performed such work was "largely irrelevant" under the contract); *with Federowicz v. Zenith Labs., Inc.*, No. 8-90-588, 1991 WL 218565, at *1 (D. Conn. July 15, 1991) (finding that contract was "performed" in Connecticut under long-arm statute[5] where defendant contracted with plaintiff to manage large Connecticut accounts and

---

[5] The *Federowicz* court applied § 33-929's predecessor long-arm statute, § 33-411. Although § 33-411 was amended in 1997 by Public Act No. 94-186, the sections of the statute pertaining to this case did not change. Other

7

plaintiff was involved in business dealings in Connecticut on behalf of defendant).

PFP's reliance on *Johnsen, Fretty & Co., supra,* is inapposite. The *Johnsen* court found that the contract at issue expressly contemplated performance in Connecticut based in part on a Connecticut choice-of-law and venue provision. *Johnsen*, 526 F. Supp. 2d at 311-12 ("In the court's view, this [choice-of-law and venue] language contemplates that the contract would be performed in Connecticut."). Here, by contrast, it is undisputed that the SPCA contains an Oregon choice of law provision, and PFP has not pointed to any other language in the SPCA that would support its argument that the contract expressly contemplated or required performance in Connecticut.

Further, PFP concedes that its enumerated activities were "made, *in part,* in Connecticut" (Objection to MTD, at 4) (emphasis added), and it has not demonstrated that that part was "the most substantial part of the obligations to be performed under the contract." *General Star Indemnity Co.*, 1998 WL 774234, at *4. In fact, PFP has not shown that it engaged in any SPCA-related activities in Connecticut beyond those that stemmed from the fact that its office is located within the state, i.e., receiving communications, sending payments, and processing payroll. Section 33-929(f)(1) requires far more than these incidental in-state activities to satisfy the "most substantial part" performance standard. *See Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.*, 190 Conn. 245, 256 (1983) (finding long-arm statute did not provide jurisdiction when the relevant conduct was "substantially made and executed in New York [and] neither the plaintiff's preliminary transfer of funds from Connecticut nor the defendant's confirmatory sending of notices to Connecticut can alter the manner and the place that [defendant] chose to do business."); *Coan v. Bell Atl. Sys. Leasing, Inc.*, 813 F. Supp. 929, 944 (D. Conn. 1990)

---

courts have applied precedent involving § 33-411 to the analogous provisions in § 33-929. *See, e.g., Preferred Display, Inc. v. Vincent Longo, Inc.*, 642 F. Supp. 2d 98, 101 n.2 (D. Conn. 2009) (explaining that precedent regarding § 33-411 applies to cases involving § 33-929).

(rejecting plaintiff's argument that based on plaintiff's payments to defendant from Connecticut, court had jurisdiction under long-arm statute, because defendant did not have other significant contacts with Connecticut); *contrast Johnsen*, at 312 (finding plaintiff investment banker "performed" contract in Connecticut when, *inter alia*, the contract had Connecticut choice of law and venue provision and plaintiff prepared relevant documents, made numerous telephone calls, faxes, e-mails, and mailings to and from defendants, invested significant hours reviewing and analyzing defendants' information, developed a detailed memorandum of defendants' assets for presentation to potential buyers, communicated with potential buyers, answered buyers' questions, and engaged in sales negotiations all in Connecticut).

Further, PFP has not alleged any facts concerning the amount of time it spent receiving communications from Ms. Pelett while PFP was in Connecticut, how often PFP reviewed accounting of the Sale in Connecticut, or whether such accounting reports were even prepared by it or in Connecticut. Even construing PFP's allegations in the light most favorable to it, without any evidence as to the frequency or duration of PFP's SPCA-related activities in Connecticut, I cannot find that such activities were "the most substantial part" of PFP's obligations under the SPCA, which, as noted, focused on a going-out-of business sale at a store in Oregon.

PFP's remaining arguments—that jurisdiction under § 33-929(f)(1) is appropriate because PFP considered whether to enter into the SPCA while in Connecticut, that the SPCA's representations were "directed towards" PFP in Connecticut, and that PFP incurred its damages in Connecticut—are misplaced. These arguments do not implicate either part of the performance test under § 33-929(f)(1) because they do not demonstrate that the SPCA expressly contemplated or required performance in Connecticut, or that PFP's obligations under the SPCA were performed in Connecticut and constituted the most substantial part of the obligations to be

9

performed under the contract. Viewing the record as a whole and construing it in the light most favorable to PFP, I find no basis to exercise personal jurisdiction under § 33-929(f)(1).

### b. Analysis under § 33-929(f)(4)

PFP also alleges this Court has jurisdiction under § 33-929(f)(4), which provides personal jurisdiction arising "out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance." Conn. Gen. Stat. § 33-929(f)(4). PFP's second cause of action is fraud, which constitutes tortious conduct and is based on City Antique's alleged misrepresentations to induce PFP to sign the SPCA. "False representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under [§ 33-929(f)(4)]." *Knipple v. Viking Commc'ns*, 236 Conn. 602, 610 (1996) (citing *David v. Weitzman*, 677 F. Supp. 95, 99 (D. Conn. 1987)). Thus, Connecticut courts have exercised personal jurisdiction over an out-of-state defendant where that defendant, while remaining outside Connecticut, sent misrepresentations into the state. *See, e.g., id*.

Yet PFP's fraudulent misrepresentation allegations fail to make a prima facie showing that this Court may exercise personal jurisdiction over City Antique under § 33-929(f)(4). All of PFP's allegations of fraud relate to misrepresentations City Antique allegedly made during negotiations of the SPCA, misrepresentations that PFP alleges ended up in specific provisions of the SPCA. Specifically, PFP alleges that City Antique's representations in the SPCA that the invoice amount was accurate, that it was current with its taxes, that it would provide PFP with unencumbered use and occupancy of the Sale location, and that it would indemnify, defend, and hold PFP harmless from any Sale expenses were fraudulent. (*See* Compl. ¶¶ 98-102.) PFP does not dispute City Antique's assertion, however, that the SPCA was fully negotiated and "made" in Oregon. (*See* MTD, at 12; Pelett Aff. ¶ 5). There is thus no allegation or evidence that any of

10

these allegedly false representations "enter[ed] Connecticut by wire or mail" or otherwise occurred "in this state" under § 33-929(f)(4).

Similarly, PFP's pleadings do not indicate that any of Ms. Pelett's misrepresentations during negotiations occurred while the parties were in Connecticut, or that such misrepresentations were communicated to PFP in Connecticut by mail, phone, wire, or other means. Instead, PFP merely states that its "considerations as to whether to enter into the SPCA with Defendant occurred in Connecticut" and that "information provided by Defendant to Plaintiff to fraudulently induce Plaintiff to enter into the contract with Defendant *was reviewed* in Connecticut." (*See* Rosenberg Aff. ¶¶ 11-12) (emphasis added.) Exercising jurisdiction under § 33-929(f)(4) on the basis of such allegations alone would allow any party to invoke jurisdiction any time it "reviewed" fraudulent misrepresentations while in the State of Connecticut, regardless of where such misrepresentations were actually made or directed.

The reach of § 33-929(f)(4) does not extend that far. Instead, courts exercising jurisdiction under this provision of the long-arm statute have repeatedly found that the tortious conduct, if occurring outside of Connecticut, occurs "in this state" under § 33-929(f)(4) if it enters directly into Connecticut by means such as telephone, wire, or mail. *See, e.g., Knipple*, 236 Conn. at 609-11 (finding personal jurisdiction under § 33-929(f)(4) when plaintiffs' undisputed allegations demonstrated misrepresentation through telephonic and postal communications sent to and received by plaintiff in Connecticut); *Weitzman*, 677 F. Supp. at 99 (exercising personal jurisdiction under § 33-929(f)(4) when plaintiff alleged defendant made fraudulent misrepresentations regarding a condominium through the mail and over telephone to plaintiff, while plaintiff was in Connecticut); *Vanco Trading, Inc. v. Odfjell Terminals (Houston) LP*, No. 3:09-cv-219, 2010 WL 965789, at *3 (D. Conn. March 15, 2010) (finding personal

jurisdiction under § 33-929(f)(4) where plaintiff alleged that defendant made fraudulent misrepresentations over the phone to plaintiff in Connecticut during the course of negotiations).

PFP's alternative arguments also do not present a prima facie showing that personal jurisdiction is appropriate under § 33-929(f)(4). First, it is not relevant for purposes of § 33-929(f)(4) that Ms. Pelett first reached out to PFP in Connecticut because PFP does not allege this initial communication constituted a fraudulent misrepresentation. Second, PFP's remaining argument—that this Court may exercise jurisdiction because City Antique should have reasonably expected its fraudulent conduct to have consequences in Connecticut after it contracted with a Connecticut-based company—stretches the reach of § 33-929(f)(4) too far, as it would authorize jurisdiction over any person that committed a tort while doing business with a Connecticut-based company. *See Bross Utils. Serv. Corp. v. Aboubshait*, 489 F. Supp. 1366, 1372-73 n.35 (D. Conn. 1980), *aff'd* 646 F.2d 559 (2d Cir. 1980) (noting that Connecticut's long-arm statute subjects non-resident *individuals* to jurisdiction in Connecticut for tortious acts outside the state that have effects in Connecticut but contains no similar provision for corporations).

Because I have concluded that PFP has alleged no basis upon which this Court may exercise personal jurisdiction under Connecticut's long-arm statute, I need not reach the question whether personal jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment.[6]

---

[6] PFP cites no other long-arm provisions—or any other basis—upon which this Court may exercise personal jurisdiction as to PFP's unjust enrichment and declaratory relief claims. In any event, the same analysis applies to these claims. Specifically, PFP's unjust enrichment claim incorporates by reference all preceding portions of the complaint, including PFP's allegations related to City Antique's breach of contract and fraud. (*See* Complaint, ¶¶ 108-110.) Thus, whether PFP is alleging City Antique was unjustly enriched by breaching the SPCA or by City Antique's fraudulent misrepresentations, this Court may not exercise personal jurisdiction over such a claim under either subsection (f)(1) or (f)(4) of § 33-929, respectively. Similarly, PFP's fourth cause of action seeks a declaratory judgment that PFP did not breach the SPCA, that City Antique is not entitled to another accounting from PFP, that PFP did not have a fiduciary duty or special relationship with City Antique, and that it committed no fraud

### IV.     City Antique's Motion to Transfer Venue

City Antique has requested that I transfer this proceeding to the District of Oregon under 28 U.S.C. § 1404(a).  Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  However, transfer under this section assumes venue is proper in this Court, which it is not.  Under 28 U.S.C. § 1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides," and 28 U.S.C. § 1391(c) further explains that a defendant corporation "resides" in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  Because I have determined this Court lacks personal jurisdiction over City Antique, venue is improper here.

Other courts within this district, after determining that they lacked personal jurisdiction over a defendant and that venue was improper, have nonetheless transferred cases under 28 U.S.C. § 1406(a) to a district court where venue did lie.  *See WorldCare Ltd. Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 364 (D. Conn. 2011) (finding no personal jurisdiction but transferring the case, in the interest of justice, after *sua sponte* construing defendant's § 1404(a) motion as a § 1406(a) motion); *Ebm-Papst, Inc. v. AEIOMed, Inc.*, No. 3:08-cv-549, 2009 WL 291012, at *6 (D. Conn. Feb. 6, 2009) (same); *Rivera v. Armstrong*, No. 3:03-cv-1314, 2007 WL 683948, at *3-4 (D. Conn. March 2, 2007) (finding no personal jurisdiction but explaining that court may *sua sponte* transfer action under § 1406(a)).

Under 28 U.S.C. § 1406(a), a district court faced with an improperly filed case "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which

---

against City Antique.  (Compl. ¶¶ 111-115.)  Because this claim arises out of the breach of the SPCA and fraud, it implicates the same provisions of § 33-929(f) discussed above.

13

it could have been brought." 28 U.S.C. § 1406(a). Both the Supreme Court and Second Circuit have held that regardless of whether a district court has personal jurisdiction over the defendant, it has the power to transfer a case to another judicial district. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendant or not."); *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000) (citing *Goldlawr* and noting that the Supreme Court has "made clear that a district court lacking both personal jurisdiction and proper venue could transfer under section 1406(a) to a district where both defects were avoided . . . [L]ack of personal jurisdiction [can] be cured by transfer to a district in which personal jurisdiction [can] be exercised, with the transfer authority derived from . . . 1406(a).").

"Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). "A district court may transfer a case on motion by either party or *sua sponte* on its own motion." *WorldCare Ltd. Corp.*, 767 F. Supp. 2d at 365 (citing *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371-72 n.3 (2d Cir. 1996)) ("[W]here the motion asks only that the suit be dismissed, the court may properly, *sua sponte*, order it transferred [pursuant to 28 U.S.C. § 1406(a)]").

I find that the interest of justice would be served by transferring this case to the District of Oregon instead of dismissing it. First, this proceeding "could have been brought" in the District of Oregon. 28 U.S.C. § 1406(a). City Antique acknowledges it is subject to personal jurisdiction in Oregon (Motion to Transfer, at 4), which PFP does not dispute. Further, because 28 U.S.C. 1391(c) states that venue is appropriate where the defendant corporation is subject to

personal jurisdiction, venue would also be appropriate in the District of Oregon.

Second, it would be in the "interest of justice" to transfer this case to the District of Oregon instead of dismissing it. 28 U.S.C. § 1406(a). Although PFP, in its Objection to the Motion to Transfer, argues that transfer to the District of Oregon would inconvenience PFP by forcing it to litigate outside of Connecticut, it has not alleged that it does not have the means to litigate in Oregon. And transferring the case, thereby allowing it to proceed, would be preferable to the harsh remedy of dismissal. *See WorldCare Ltd. Corp.*, 767 F. Supp. 2d at 368 ("[T]ransfer of this action will promote judicial efficiency, allowing the plaintiff to proceed with its claim without re-filing its action and pleadings."). "Transfer may thus 'prevent the waste of time, energy and money and . . . protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Id.* (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

Thus, because both PFP's venue and personal jurisdiction defects are remedied by transfer to the District of Oregon, I hereby transfer this case to the District of Oregon in the interest of justice under 28 U.S.C. § 1406(a).

### V. City Antique's Motion to File Supplemental Affidavit

On August 4, 2014, City Antique filed a motion seeking leave to file a supplemental declaration from Ms. Pelett. [Doc. #22.] City Antique said Ms. Pelett's declaration was a response to PFP's Objections, and would "clarify and more accurately reflect the formation of and the nature of the business relationship" between the parties. (Supp. Mot., at 2.) Because I have already found that this Court lacks personal jurisdiction over City Antique, I DENY as moot City Antique's Motion to File Ms. Pelett's Supplemental Affidavit.

### VI. Conclusion

For the reasons above, I DENY City Antique's MTD and GRANT its Motion to Transfer

under 28 U.S.C. § 1406(a). I DENY as moot City Antique's Motion for Leave to File a Supplemental Declaration. The Clerk is instructed to transfer the case to the United States District Court for the District of Oregon.

IT IS SO ORDERED.

        /s/
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              October 29, 2014